# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| MALENA HINTEN and LAUREL MOORE, )<br>individually and on behalf of others similarly )<br>situated, )<br>       )<br>           Plaintiffs,  )<br>       )<br>     v.    )<br>       )<br>MIDLAND FUNDING, LLC,  )<br>       )<br>           Defendant.  ) | No. 2:13 CV 54 DDN |

## MEMORANDUM AND ORDER

This action is before the court on the motion of defendant Midland Funding, LLC, to compel arbitration and to dismiss the claims of plaintiffs Malena Hinten, Laurel Moore, and other similarly situated plaintiffs. (Doc. 20.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 14.) The court heard oral argument on September 26, 2013.

## I. BACKGROUND

On June 7, 2013, plaintiff Malena Hinten, individually and on behalf of similarly situated Missouri residents, commenced this action against defendant Midland Funding, LLC. (Doc. 1.) On June 17, 2013, plaintiff Hinten amended the complaint to include plaintiff Laurel Moore. (Doc. 10.)

According to the complaint, the following occurred. Plaintiffs, including Hinten and Moore, are Missouri residents subjected to the defendant's debt collection method of filing judicial actions in Missouri courts within the three years preceding the commencement of the instant action. (Id. at ¶¶ 1, 7.) Defendant engages in the collection of debt acquired after default. (Id. at ¶ 4.) Specifically, defendant purchases deeply discounted portfolios of debt that original creditors have ceased their attempts to collect. (Id. at ¶¶ 11-13.) From the original creditors,

defendant receives solely a bill of sale and limited information concerning the debtors. (Id. at ¶ 15.)

Plaintiffs allege that when informal means do not result in debt satisfaction, defendant files an action in Missouri state courts with no intention of prosecuting the action and with no intention of obtaining further evidence to establish its claims. (Id. at ¶¶ 18, 19, 24, 27, 29.) Rather, by filing a state court action, defendant seeks to prevail only by settlement or by a default judgment. (Id. at ¶ 26.) Defendant's method includes filing undetailed complaints and filing motions to continue and for default judgment. (Id. at ¶ 28.) Defendant makes no attempt to obtain evidence in support of the claim. (Id. at ¶ 29.) For example, defendant's state court pleadings against plaintiffs indicated only alleged amounts of debt, and defendant took no action, including discovery requests, to verify facts supporting its cause of action and did not provide plaintiffs with such verification. (Id. at ¶¶ 67-68, 73-74.) Further, the terms of the agreement by which defendant purchased the debt against plaintiffs prohibit defendant from seeking information from the previous owner of the debt. (Id. at ¶ 29(g).) Furthermore, defendant files affidavits to authenticate business records knowing that the affiant lacks personal knowledge. (Id. at ¶¶ 35-37.) If the actions come near the trial date in the state court proceedings, defendant attempts to settle, and, if unsuccessful, dismisses the case. (Id. at ¶¶ 42-44.) In most cases, debtors settle or the court orders default judgment. (Id. at ¶ 39.)

Plaintiffs allege under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq., that defendant filed Missouri state court judicial collection actions against them as consumers for the sole purpose of obtaining default judgments or inducing settlement with no intention of further prosecuting the claims. (Id. at ¶¶ 94-95.) Plaintiffs allege that such conduct constitutes a false or misleading representation because, by filing a lawsuit, defendant represents it intends to continue to prosecute it. (Id.)

As a separate claim, plaintiffs allege that defendant filed these state court actions without sufficient evidence to support the pleadings, without knowledge of sufficient evidence, or without the intent to investigate further.[1] (Id. at ¶¶ 97-98.) Plaintiffs allege that such conduct constitutes a misrepresentation regarding the character, amount, and legal status of the debt and

---

[1] Although plaintiffs include the allegations specific to the Fair Debt Collection Practice Act under a single heading in their complaint, the nature of the allegations contained thereunder imply two separate claims. Accordingly, the court construes these allegations as two separate claims.

an attempt to collect amounts not expressly authorized by agreement or permitted by law.  (Id.) Plaintiffs further allege as Missouri state law claims abuse of process, prima facie tort, and violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020.  (Id. at ¶¶ 103-23.)

Plaintiffs request statutory damages in the amount of $500,000.00 under 15 U.S.C. § 1692(a)(2)(A), actual damages under 15 U.S.C. § 1692(a)(1), costs and attorney fees under 15 U.S.C. § 1692(a)(3).  Plaintiffs further demand a jury trial.  (Id. at 38-39.)

## II. MOTION TO COMPEL ARBITRATION OR TO DISMISS

Defendant moves to compel arbitration, alleging that plaintiffs Hinten and Moore signed a credit agreement with an arbitration clause covering claims between debtors and assignees arising from the credit accounts or agreements.  Plaintiffs respond that defendant fails to show that plaintiffs' claims are subject to an arbitration clause. (Docs. 21, 28.)

Alternatively, defendant moves to dismiss for failure to state a claim, arguing that the conduct alleged does not constitute false or misleading representations or unfair or unconscionable conduct under the Fair Debt Collection Practices Act, and that abuse of process claims constitute compulsory counterclaims in the underlying state suits.  Defendant further argues that Missouri law does not recognize negligence, recklessness, or intentional actions based upon the filing of an action, that plaintiffs fail to articulate facts supporting an abuse of process claim, and that the Missouri Merchandising Practices Act requires a connection to the sale or advertising of merchandise and requires pleading with particularity. (Doc. 21.)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of the complaint.  Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010).  To survive a 12(b)(6) motion, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To meet the plausibility standard, the complaint must contain "more than labels and conclusions."  Id. at 555.  Rather, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

**A. Motion to Compel Arbitration**

The Federal Arbitration Act provides that contractual provisions for the arbitration of controversies arising from the contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. "When a party moves to compel arbitration, our role is to determine whether there is an agreement between those parties which commits the subject matter of the dispute to arbitration." Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085 (8th Cir. 2001).  "A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract."  GGNSC Omaha Oak Grove, LLC v. Payich, 708 F.3d 1024, 1026 (8th Cir. 2013).

To support its motion to compel, defendant proffers the affidavit of Kyle Hannan as the custodian of defendant's records.[2] (Doc. 21-1 at 1-4.)  The affidavit states that plaintiffs Hinten and Moore entered into credit agreements attached thereto that include arbitration clauses applicable to this action.  (Id.)  Plaintiffs argue that the purported credit agreements constitute hearsay that falls under no exception, including the business record exception.

The Federal Rules of Evidence provide a hearsay exception for business records:

A record of an act, event, condition, opinion, or diagnosis if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

---

[2] Specifically, Kyle Hannan states that Midland Credit Management, Inc. employs him and that Midland Credit Management, Inc. services and manages the accounts acquired in defendant's name.  (Doc. 21-1 at 1.)

Fed. R. Evid. 803(6).

Plaintiffs argue that the records are inadmissible because Kyle Hannan has no personal knowledge regarding the recordkeeping practices of the original record maker or record keeper. Plaintiffs rely on Missouri law, arguing that under Mo. Rev. Stat. § 490.680, "a document that is prepared by one business cannot qualify for the business records exception merely based on another business's records custodian testifying that it appears in the files of the business that did not create the record." CACH, LLC v. Askew, 358 S.W.3d 58, 63 (Mo. 2012). However, because privilege is not at issue, the Federal Rules of Evidence, not the Missouri state evidentiary rules, apply in this federal action. Fed. R. Evid. 101(a); Fed. R. Evid. 1101.

Plaintiffs do not argue that state evidentiary rules apply, but that the federal and state applications of the business record hearsay rule are identical. The court disagrees. The holdings of the Eighth Circuit sharply contrast with the Supreme Court of Missouri's in Askew. For Fed. R. Evid. 803(6), "a custodian or 'other qualified witness' need not have personal knowledge regarding the creation of the document offered, or personally participate in its creation, or even know who actually recorded the information." Resolution Trust Corp. v. Eason, 17 F.3d 1126, 1132 (8th Cir. 1994). Further, the Eighth Circuit has held that "a record created by a third party and integrated into another entity's records is admissible as the record of the custodian entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied." Brawner v. Allstate Indem. Co., 591 F.3d 984, 987 (8th Cir. 2010).

In Brawner, the plaintiffs sued their insurance company for denying a claim under their homeowner's policy. Id. at 985. A bank held a mortgage on the residence, which the Veterans Administration guaranteed. Id. At trial, the district court admitted documents submitted by the insurance company, offered by the bank's employee, but prepared by the Veterans Administration. Id. at 987. The plaintiffs challenged the admission of the documents as hearsay, arguing that Fed. R. Evid. 803(6) "requires that a representative of the entity that created the document testify for foundation." Id. The Eighth Circuit found that the trial court's admission did not constitute abuse of discretion, reasoning that the bank integrated the documents into its files, the bank relied on the accuracy of the documents, and the bank kept the files in the course of its regularly conducted business. Id. at 987-88.

The affidavit of Kyle Hannan states that defendant received the records from third parties, integrated them into its records, and relies upon them in the course of conducting its

business.  (Doc. 21-1 at 1-2.)  His affidavit further states that from his personal knowledge or upon his information and belief, the records were made by or from information transmitted by a person with knowledge of the relevant events at or near the time of their occurrence, that the records were kept in the originator's ordinary course of regularly conducted business activity, that making such records are a regular practice of that activity, and that Kyle Hannan is defendant's custodian of records.  (Id.)

Plaintiffs question the authenticity of the credit agreements, contending that defendant has not shown that they apply to plaintiffs.  Specifically, plaintiffs note that the credit agreements lack their signatures and that the agreements purportedly pertaining to each named plaintiff postdates the dates they purportedly entered into the agreements.  Defendant proffers the credit agreements as the credit agreements that apply to plaintiffs' credit accounts.  "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901.  Stated otherwise, defendant must prove that the proffered credit agreements are the credit agreements that apply to plaintiffs' credit accounts.

The records indicate that plaintiff Hinten opened a credit account on September 28, 2007, but the credit agreement provided lacks plaintiff Hinten's signature or any other indication of her acceptance, and it is dated 2009.  (Doc. 21-1 at 7, 12-17.)  Similarly, the records indicate that plaintiff Moore opened a credit account on November 29, 2005, but the credit agreement provided lacks plaintiff Moore's signature or any other indication of her acceptance, and it is dated 2006.  (Id. at 19, 22-25.)  Defendant offers no evidence that the proffered agreements apply to plaintiffs beyond Kyle Hannan's bare statement, which the court disregards as a legal conclusion, and records indicating that plaintiffs maintained credit accounts.  See Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 801 (8th Cir. 2004) ("We consider only admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions as fact").

Defendant explains that credit card agreements are frequently modified, implying that the proffered credit card agreements were subsequently modified by plaintiffs and defendant's assignors.  To support its argument, defendant relies on Citibank (S. Dakota), N.A. v. Wilson, 160 S.W.3d 810 (Mo. Ct. App. 2005).  In that case, the state appellate court reversed the trial court's decision to dismiss on the ground that the plaintiff creditor had failed to present evidence

supporting the debtor's acceptance of the revised agreement. Id. at 815. In so holding, the court relied on the following:

> Citibank presented evidence that it mailed Wilson her July 2001 credit card statement, which notified her that the revised agreement was enclosed. Furthermore, Citibank communicated to Wilson that the revised agreement was binding unless she cancelled her account within thirty days and did not use her credit card. Despite the fact that Wilson could have cancelled her account, she continued to use her credit card after July 2001, thus manifesting her acceptance of the revised agreement.

Id. In contrast to Citibank, here, defendant has presented no evidence that plaintiffs received the modified credit agreements, that plaintiffs received notice that such agreements were binding upon further use of the card, and that plaintiffs subsequently used the credit cards.

Defendant also argues that, because plaintiffs used the credit cards, the terms of the agreements are binding. Although plaintiffs' alleged use of the credit cards implies consent to some agreement, such use does not indicate consent to the specific terms submitted by defendant. In other words, the records attached to Kyle Hannan's affidavit do not show that plaintiffs Hinten or Moore used their credit cards after the issuance of the agreements relied upon nor any other manner of acceptance of these agreements. (Doc. 21-1 at 7-25.) Cf. Reeves v. Chase Bank USA, NA, 2008 WL 2783231, *4 (E.D. Mo. 2008). In any event, as set forth above, defendant fails to provide evidence that plaintiffs received or knew of the modified agreements or subsequently used the credit cards.

The court finds that defendant has failed to establish that the proffered credit agreements are the agreements that apply to plaintiffs, and therefore, excludes the credit agreements for failure to authenticate. Defendant offers no other evidentiary support of an agreement committing plaintiffs' claims to arbitration, and accordingly, defendant's motion to compel arbitration is denied.

**B. Fair Debt Collection Practices Act**

Defendant moves to dismiss for failure to state a claim, arguing that the conduct alleged does not constitute false or misleading representations or unfair or unconscionable conduct.

The purpose of the Fair Debt Collection Practices Act is "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers."

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 577 (2010); 15 U.S.C. § 1692(e). The Act prohibits debt collectors from engaging in harassment or abuse, false or misleading representations, or unfair practices. 15 U.S.C. §§ 1692d-1692f. It further authorizes private causes of action against debt collectors that fail to comply with any provision of the Act. 15 U.S.C. § 1692k. "The [Act] is a strict liability statute and is liberally construed to protect consumers." Zortman v. J.C. Christensen & Associates, Inc., 870 F. Supp. 2d 694, 702 (D. Minn. 2012); Hage v. Gen. Serv. Bureau, 306 F. Supp. 2d 883, 887 (D. Neb. 2003) (citing Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002)). The unsophisticated consumer test determines whether conduct constitutes false or misleading representations. Duffy v. Landberg, 215 F.3d 871, 874 (8th Cir. 2000). The test is "designed to protect consumers of below average sophistication or intelligence [but also contains] an 'objective element of reasonableness' that 'prevents liability for bizarre or idiosyncratic interpretations of collection notices.'" Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir. 2002)

In essence, plaintiffs allege that defendant filed judicial collection actions against them as consumers for the sole purpose of obtaining default judgments or inducing settlement with no intention of further prosecuting the claim. Plaintiffs allege that such conduct constitutes a false or misleading representation because, by filing a lawsuit, defendant represents its intent to continue to prosecute it. Plaintiffs also allege that defendant filed these actions without sufficient evidence, knowledge thereof, or intent to investigate, which constitutes a misrepresentation regarding the character, amount, and legal status of the debt and an attempt to collect amounts not expressly authorized by agreement or permitted by law. The Act's prohibitions apply to collection efforts through litigation but also seek to preserve the judicial remedies of creditors. Heintz v. Jenkins, 514 U.S. 291, 296, 299 (1995); Hemmingsen v. Messerli & Kramer, P.A., 674 F.3d 814, 818 (8th Cir. 2012). The Eighth Circuit has not squarely addressed the issue of whether plaintiffs' allegations of defendant's intent and lack of sufficient evidence when it filed the collection cases are legally sufficient as violations of the Act. However, the Eighth Circuit has discussed whether other litigation tactics violate the Act.

In Hemmingsen, a creditor commenced a collection action in state court. Each party moved for summary judgment. Id. at 816. The creditor's motion memorandum asserted that the debtor entered into the credit agreement by using the credit account, making payments, and acknowledging a jointly held unpaid balance; and the creditor supported the allegations with an

affidavit from the creditor's custodian of records.  Id. at 816-17.  However, the state court ruled in favor of the debtor, who argued that the creditor failed to provide evidence of any contract or account.  Id. at 817. Thereafter, the creditor provided a document evidencing the debtor's connection to the account.  Id.  The debtor filed suit in federal court alleging that the creditor violated the Act by making false statements in its motion memorandum.  Id.  Despite substantial evidence supporting the debtor's state court motion memorandum and the decision of the state court in favor of the debtor, the Eighth Circuit found that creditor's state court motion memorandum was not false or misleading.  Id. at 819.  The Eighth Circuit explicitly dismissed the contention that fact allegations rejected by courts for lack of evidentiary support are categorically false and misleading, emphasizing creditors' right to judicial proceedings and existing remedies to combat fraudulent litigation tactics.  Id.  at 819-20.  The Eighth Circuit further found the creditor's fact allegations sufficiently grounded in fact to defeat the debtor's claims that the creditor's conduct constituted harassment or unfair practices within the Act.  Id. at 820.  The Eighth Circuit concluded that "we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken."  Id.

In another case, the Eighth Circuit held that "in the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid."  Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001).  Therein, the Eighth Circuit relied on Kimber v. Fed. Fin. Corp., 668 F.Supp. 1480 (M.D. Ala. 1987).  In Kimber, the court found that "a debt collector's filing of a lawsuit on a debt that appears to be time-barred, without the debt collector having first determined after a reasonable inquiry that that limitations period has been or should be tolled" constituted an unfair practice under the Act.  Id. at 1487.  The court reasoned:

> Because few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts, such consumers would unwittingly acquiesce to such lawsuits. And, even if the consumer realizes that she can use time as a defense, she will more than likely still give in rather than fight the lawsuit because she must still expend energy and resources and subject herself to the embarrassment of going into court to present the defense; this is particularly true in light of the costs of attorneys today.

Id. The court further found that the creditor's conduct constituted a false and misleading representation, stating that "[t]he dispositive fact is that a debt collector could not legally prevail in such lawsuit, and for the debt collector to represent otherwise is fraudulent." Id. at 1489.

The court finds that plaintiffs' claim closely resembles that in Kimber. According to plaintiffs' allegations, defendant did not merely prosecute an unsuccessful action later found supported by insufficient evidence. Rather, plaintiffs allege that defendant commenced a judicial action with no intention of further prosecution, with insufficient evidence, and no intention of further seeking evidence, but merely relying on the very unsophisticated nature of consumers that Congress designed the Act to protect. In sum, the court concludes that, assuming the truth of plaintiffs' allegations, as in Kimber, defendant could not have legally prevailed in these lawsuits from the time of their commencement, and for defendant to have represented otherwise constitutes fraudulent conduct. Moreover, in harmony with Henningsen, recognizing claims against creditors that file actions with no intent of obtaining sufficient evidence or participating in discovery or substantive motion practice does not bar access to judicial proceedings for the purpose of accurate resolution of legal disputes. See Hemmingsen, 674 F.3d at 819.

Further, the opinions from other circuits relied upon by defendant are distinguishable. In Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 327-28 (6th Cir. 2006), the Sixth Circuit framed the debtor's allegation as, "at the time of filing, [the creditors] did not have the means of proving their debt-collection claim."[3] However, here, plaintiffs allege that, at the time of filing, defendant not only lacked the means to prove their claim but the intention to do so.[4] In Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d 470, 472 (7th Cir. 2007), the debtor alleged that "the complaint filed in the state suit and an attached affidavit violated the FDCPA because their description of the contracts among [the original creditor and its assignees] was not

---

[3] The Sixth Circuit made this statement in the context of determining "whether [the consumer] intended to allege that (1) [the debt collectors] filed the complaint without having on hand at the time of filing the means to prove the complaint, or (2) [the debt collectors] filed the complaint without the means of ever being able to obtain sufficient proof of the debt-collection action." Harvey, 453 F.3d at 327-28. As indicated above, the Sixth Circuit settled on the former. Id. at 328.

[4] The Sixth Circuit noted that the debtor argued in her appellate brief that the creditor chose not to acquire the documentation needed to prove its debt-collection claims "because of the time and cost of obtaining such documentation." Harvey, 453 F.3d at 328. Although this argument more closely resembles plaintiffs' claim, the Sixth Circuit disregarded the argument because the debtor raised it for the first time on appeal. Id. at 329.

clear enough to enable an unsophisticated consumer to understand the relation among merchant, transaction processor, and creditor." The Seventh Circuit rejected the debtor's argument, reasoning that the debtor complained of lack of clarity attributable to the complexity of the credit card payment system rather than an attempt to deceive or mislead. Id. at 473. Here, plaintiffs do not allege the mere lack of clear legal writing but that defendant mislead them into believing that it would further prosecute the suit and attempted to force them to default or settle.

Defendant argues that recognizing plaintiffs' claim would leave creditors in an untenable position where voluntary dismissal or failure to prosecute the case results in liability under the Act and continued prosecution without sufficient evidence incurs the risk of losing at trial and further costs. Defendant further argues that prevailing at trial would become the only way to avoid liability under the Act. Defendant presents an inaccurate dichotomy. Voluntary dismissal and failure to prosecute are no more actionable than a debt collector's choice to decline to take a threatened legal action. See 15 U.S.C. § 1692e(5) (prohibiting threats "to take any action that cannot legally be taken or that is not intended to be taken"). Section 1692e(5) does not purport to punish creditors categorically for declining to subsequently follow through on lawful threats for good reason. Rather, as with plaintiffs' claim, § 1692e(5) focuses on the timing of the intent. Accordingly, the burden rests with plaintiffs to prove that, at the time it commenced the action, defendant intended to not prosecute the action but to only seek settlement or default judgment; or that, at the time it commenced the action, defendant possessed insufficient evidence and intended not to further investigate.

Finally, by recognizing this theory of liability, the court does not seek to dissuade creditors from obtaining settlements, default judgments, voluntary dismissal, or access to the courts. To the contrary, the theory merely dissuades a creditor from using the unspoken threat of a filed lawsuit without intent to further prosecute and without sufficient evidence or intent to investigate further as leverage for settlement, from preying on the unsophisticated consumer's unwitting acquiescence or fear of embarrassment to obtain default judgment, and from resorting to voluntary dismissal only when the ineffectiveness of these tactics becomes apparent.

The court finds plaintiffs' claims cognizable under the Act. See Samuels v. Midland Funding, LLC, 921 F. Supp. 2d 1321, 1331 (S.D. Ala. 2013); Royal Fin. Grp., LLC v. Perkins, 2013 WL 4419343, *4 (Mo. Ct. App. 2013); 15 U.S.C. § 1692e(5).

Defendant also argues that plaintiffs' allegations are bare assertions merely consistent with defendant's liability and do not plausibly suggest that defendant violated the Act. Specifically, defendant argues that plaintiffs' allegations that defendant files suits with the intent not to prove its case and that defendant files suits to obtain default judgments and induce settlement are unsupported by factual allegations. However, plaintiffs allege that defendant is a debt collector that filed at least two suits with insufficient evidence to prove its case, never participated in discovery or responded to requests for documentation, and dismissed on the eve of trial without notice or explanation. The court finds that such allegations "nudge" the general allegations regarding defendant's intent "across the line from conceivable to plausible." See Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009). Defendant also suggests that plaintiffs' allegations are "too chimerical to be maintained" as in Ashcroft. However, Ashcroft specifically rejected the contention that the Court disregarded the allegations in that case due to their chimerical, extravagant, or fanciful nature. Id. at 681. Accordingly, with respect to these claims, defendant's motion to dismiss is denied.

**C. Prima facie tort**

Defendant moves to dismiss plaintiffs' negligence claim that also includes allegations of wanton and intentional conduct, arguing that Missouri law does not recognize such claims based merely upon the filing of a civil action. Plaintiffs concede that Missouri courts have not recognized a tort aimed at debt collectors but implore the court to consider the tort as an issue of first impression. (Doc. 28 at 14.) "Where neither the legislature nor the highest court in a state has addressed an issue, the federal court must determine what the highest state court would probably hold were it called upon to decide the issue." Hazen v. Pasley, 768 F.2d 226, 228 (8th Cir. 1985).

Missouri courts have recognized prima facie tort claims. Porter v. Crawford & Co., 611 S.W.2d 265, 268 (Mo. Ct. App. 1980). To establish a prima facie tort, plaintiffs must allege "(1) an intentional lawful act by defendant; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) an absence of or insufficient justification for defendant's act." Nazeri v. Missouri Valley Coll., 860 S.W.2d 303, 315 (Mo. 1993). However, Missouri courts prohibit prima facie tort claims where "there is a recognized tort available to remedy the alleged wrong." Rice v. Hodapp, 919 S.W.2d 240, 246 (Mo. 1996). Stated another way, "liability for prima facie

tort exists only when the act causing injury was lawful." Wise v. Crump, 978 S.W.2d 1, 4 (Mo. Ct. App. 1998). In sum, the federal Fair Debt Collection Practices Act provides a remedy for plaintiffs' allegations, and thus, Missouri law precludes recognition of plaintiffs' novel theory of liability. Accordingly, defendant's motion to dismiss this state law claim is sustained.

**D. Abuse of Process**

Defendant moves to dismiss plaintiffs' abuse of process claim, arguing that it constitutes a compulsory counterclaim in the underlying state action and that plaintiffs did not adequately plead abuse of process. Under Missouri law:

> A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Mo. Sup. Ct. R. 55.32(a). "The clear function of the rule is to serve as a means of bringing all logically related claims into a single litigation, through the penalty of precluding the later assertion of omitted claims." State ex rel. J.E. Dunn, Jr. & Associates, Inc. v. Schoenlaub, 668 S.W.2d 72, 75 (Mo. 1984). Transaction is construed in the broadest sense. Id. "[T]he compulsory counterclaims rule operates only as to claims of the adversary already matured at the time of service of the pleading of that party is due." Myers, 687 S.W.2d at 263. "[A] cause of action accrues when the damage resulting therefrom is sustained and is capable of ascertainment." Knight v. M.H. Siegfried Real Estate, Inc., 647 S.W.2d 811, 814 (Mo. Ct. App. 1982).

Plaintiffs' allegations for abuse of process include as part of the claim allegations that defendant participated in no discovery and dismissed their claims without prior notice, which are integral to plaintiff's contention that defendant commenced an action with no intent of prosecution. Plaintiffs allege that they filed pleadings in state court prior to dismissal. Thus, plaintiffs' abuse of process claim as alleged could not have been ascertainable at the time they served their pleadings. Therefore, the compulsory counterclaim rule does not preclude plaintiffs' abuse of process claim.

Defendant also argues that plaintiffs' abuse of process claim fails because they failed to allege an improper purpose for the state court litigation. For an abuse of process claim, plaintiffs

must establish that "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." Ritterbusch v. Holt, 789 S.W.2d 491, 493 (Mo. 1990). Although pursuant to the Fair Debt Collection Practice Act, defendant's alleged conduct and purposes are illegal, abuse of process under Missouri law does not contemplate the expansive protection afforded by the Act. For instance, Missouri courts have held that an action for an abuse of process does not lie "where the action is confined to its regular function even if the plaintiff had an ulterior motive in bringing the action, or if the plaintiff knowingly brought the suit upon an unfounded claim." Howard v. Youngman, 81 S.W.3d 101, 118 (Mo. Ct. App. 2002). Moreover, the objectives of obtaining a default judgment or inducing a settlement are not outside the regular purview of process, and plaintiffs allege no willful act of process unauthorized by Missouri law. See Ritterbusch v. Holt, 789 S.W.2d 491, 493 n.1 (Mo. 1990) ("the test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is outside the regular purview of the process"); Dillard Dep't Stores, Inc. v. Muegler, 775 S.W.2d 179, 183 (Mo. Ct. App. 1989) ("The term 'use of process' refers to some wilful, definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process."). "It is where the claim is brought not to recover on the cause of action stated, but to accomplish a purpose for which the process was not designed that there is an abuse of process." Misischia v. St. John's Mercy Med. Ctr., 30 S.W.3d 848, 862 (Mo. Ct. App. 2000). Here, plaintiffs' allegations indicate that, despite the use of false or misleading tactics, defendant intended to recover on the cause of action stated. Accordingly, defendant's motion to dismiss is sustained in this regard.

### E. Missouri Merchandising Practices Act

Defendant moves to dismiss plaintiffs' claim under the Missouri Merchandising Practices Act (MMPA), arguing that MMPA does not apply where the alleged acts had no connection with the sale or advertising of merchandise. Plaintiffs respond that the MMPA applies to debt collection activities.

> The MMPA states:
>
> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice.

Mo. Rev. Stat. § 407.020(1). "The entire thrust of the Merchandising Practices Act is that consumers rely upon the fair dealing of those selling merchandise and services." State ex rel. Webster v. Areaco Inv. Co., 756 S.W.2d 633, 637 (Mo. Ct. App. 1988).

Defendant argues that MMPA does not apply where the alleged acts had no connection with the sale or advertising of merchandise, relying on State ex rel. Koster v. Prof'l Debt Mgmt., LLC, 351 S.W.3d 668 (Mo. Ct. App. 2011). In that case, the state of Missouri alleged violations of the MMPA, stating that a debt collection agency made false representations regarding debt collection but did not state that the agency was a party to the initial consumer transactions or that any unfair practices occurred regarding the initial transactions. Id. at 670. The court considered "whether the broad reach of the [MMPA] extends to unfair or deceptive debt collection activities that are alleged to have occurred after the initial sale of merchandise, and by a third-party debt collector who was not a party to the original consumer transaction." Id. at 671. The court rejected the contention that "actions occurring after the initial sales transaction, which do not relate to any claims or representations made before or at the time of the initial sales transaction, and which are taken by a person who is not a party to the initial sales transaction, are made 'in connection with' the sale or advertisement of merchandise as required by the [MMPA]." Id. at 674.

Here, plaintiffs fail to allege wrongful conduct in connection with the initial extension of credit. They also fail to allege that defendant was a party to the initial transaction.

Plaintiffs respond that the MMPA covers debt collection, relying on Huffman v. Credit Union of Texas, 2011 WL 5008309 (W.D. Mo. 2011). In Huffman, the plaintiffs alleged that a lender or its agent made representations related to the extension of credit regarding required presale notifications both prior and subsequent to the transaction. Id. at *1. The plaintiffs' allegations involved the lender's efforts to collect debt, and the court stated, "the MMPA may apply to at least some of [the lender's] conduct." Id. at *5. The court rested its decision upon allegations that the defendant lender was a party to the initial transaction and that the claims

related to notifications prior to the sale of merchandise.  Id. at *6.  Such allegations do not appear in plaintiffs' complaint.

Because plaintiffs fail to allege that defendant was a party to the original transaction and fail to allege deceptive conduct relating to the initial extension of credit, defendant's motion to dismiss is sustained in this regard.

### IV. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendant Midland Funding, LLC, to compel arbitration (Doc. 20) is denied.

**IT IS FURTHER ORDERED** that the motion of defendant Midland Funding, LLC, to dismiss the claims of plaintiffs Malena Hinten, Laurel Moore, and other similarly situated plaintiffs (Doc. 20) is sustained in part and denied in part.  The court dismisses plaintiffs' Missouri state law claims of abuse of process, prima facie tort, and violations of the Missouri Merchandising Practices Act.  Plaintiffs' claims under the federal Fair Debt Collection Practices Act remain for further proceedings.

                                                             /S/   David D. Noce            
                                                **UNITED STATES MAGISTRATE JUDGE**

Signed on October 22, 2013.